STATE OF LOUISIANA                              NO. 24-K-478

VERSUS                                          FIFTH CIRCUIT

CAROLINA MORALES                                COURT OF APPEAL

                                                STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Linda Wiseman
First Deputy, Clerk of Court

                          November 08, 2024

                            Linda Wiseman
                            First Deputy Clerk

**IN RE** CAROLINA MORALES

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE NANCY A. MILLER, DIVISION "I", NUMBER 23-0196

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and John J. Molaison, Jr.

**WRIT DENIED, IN PART; GRANTED, IN PART; JUDGMENT VACATED, IN PART**

In this writ application, defendant, Carolina Andrea Morales, seeks this Court's supervisory review of the district court's August 19, 2024 judgment granting the State of Louisiana's notice of intent to introduce other crimes evidence under La. C.E. art. 404(B) pertaining to evidence of a prior July 2022 altercation involving Morales, and photographic evidence of various firearms. For the following reasons, Morales' writ application is denied, in part, and granted, in part, with instructions. The portion of the district court's August 19, 2024 judgment granting the State's 404(B) notice of intent pertaining to evidence of a prior July 2022 altercation involving Morales is denied. The portion of the district court's August 19, 2024 judgment granting the State's 404(B) notice of intent relating to the admission of photographs is hereby vacated.

24-K-478

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On May 4, 2023, a Jefferson Parish Grand Jury returned an indictment charging defendant, Carolina Andrea Morales,[1] with the second-degree murder of Carlos Galvez, a violation of La. R.S. 14:30.1 (count one), attempted second-degree murder of A.G., a seventeen-year-old,[2] a violation of La. R.S. 14:27:30.1 (count two), and obstruction of justice in a murder investigation by tampering with evidence used in a murder and attempted murder, a violation of La. R.S. 14:130.1 (count three). Morales pled not guilty.

On January 8, 2023, Jefferson Parish Sheriff's Office ("JPSO") deputies responded to a shooting at the La Rumba Bar & Grill ("La Rumba"), in Harvey, Louisiana. Upon arriving, the officers found two victims—one deceased from a fatal gunshot wound, and another with a gunshot wound to the neck. Law enforcement's investigation, including eyewitness accounts, revealed that a Hispanic male and a Hispanic female entered into a heated verbal argument that escalated, which led to the shooters arming themselves, and subsequently shooting the victims. Morales and Ramos, who both fled the scene, were identified by multiple witnesses as the perpetrators. There were no other weapons recovered at the scene. Forensic analysis confirmed that two separate 9mm firearms were used to shoot the victims. Morales and Ramos were later arrested on warrants for second-degree murder, attempted second-degree murder, and obstruction of justice. According to the State, both defendants downplayed their actions, claiming self-defense or manslaughter.

Subsequent to the indictment, the State filed a notice of intent to introduce other crimes evidence pursuant to La. C.E. art. 404(B). Specifically, the State

---

[1]     On the same indictment, the State charged Maynor Ramos with the same three offenses. On May 22, 2024 the district court granted a motion for severance filed by the State.

[2]     In this writ application, the initials of the minor child are used to protect and maintain the privacy of the minor child involved in this proceeding. *See* Uniform Rules–Courts of Appeal, Rule 5–1 and Rule 5–2.

2

noticed its intent to introduce evidence of a prior altercation occurring at a nightclub in July 2022, involving both Morales and Ramos, which escalated to the point where one of them allegedly fired a gun. Additionally, during their investigation, officers discovered numerous images and videos of firearms on defendants' cell phones, including photographs of defendants holding weapons, including a 9mm firearm, which is the type of weapon fired at the scene based on the ballistic evidence. In their notice of intent, the State advised that it intended to introduce at trial the images and videos extracted from defendants' cell phones. According to the State, the evidence is admissible as it fits squarely within La. C.E. art. 404(B) in that these alleged prior bad acts tend to prove intent, *modus operandi*, opportunity, and identity, in addition to rebutting any claim of self-defense or defense of others.

In response, Morales filed a motion to exclude the other crimes evidence on the basis that the acts at issue were rendered irrelevant by the severance of the two cases, and that any probative value is substantially outweighed by the risks of confusing the issues, misleading the jury, undue delay, and causing significant unfair prejudice to Morales. Ramos also filed an opposition to the State's notice.

A hearing on the State's 404(B) motion was held on July 18, 2024, and the district court took the matter under advisement.[3] On August 19, 2024, the district court issued judgment, granting the State's 404(B) notice as to both Morales and Ramos regarding the July 2022 incident that occurred at a nightclub involving both defendants, and granted the State's notice as to Morales, relative to the images of weapons that were extracted from both defendants' cell phones, but denied the State's notice as to Ramos, since none of the photographs depicted a male's face. In particular, the district court determined that ample evidence existed between the

---

[3] The State filed a single notice of intent addressing both Morales and Ramos, and a joint hearing took place on July 12, 2024, resulting in one judgment.

two incidents as Morales and Ramos are alleged to have escalated a verbal altercation at a local bar into a physical altercation, and a shooting. The court ruled that the prior incident constituted evidence of intent, knowledge, identity, and/or absence of mistake or accident. The court further ruled the value of the evidence is not outweighed by the danger of unfair prejudice. As to the photographs, the court determined that as to Morales, the photographs are admissible under La. C.E. art. 404(B) to establish Morales had access to, and was familiar with, the types of firearms used in the charged offense.

This writ application followed.[4]

## DISCUSSION

### *Applicable Law*

A trial court's ruling as to the admissibility of other crimes evidence is reviewed for an abuse of discretion. *State v. Kiger*, 13-69 (La. App. 5 Cir. 10/30/13), 128 So.3d 552, 557. Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. *State v. Neveaux*, 23-477 (La. App. 5 Cir. 11/10/23), 377 So.3d 749, 757, *writ denied*, 23-1633 (La. 3/12/24), 381 So.3d 56. Courts may not admit evidence of other crimes, wrongs, or acts of a criminal defendant in order to show that the defendant is a person of bad character who has acted in conformity therewith. La. C.E. art. 404(B); *State v. Hardy*, 14-1569 (La. 11/21/14), 154 So.3d 537, 538. However when evidence of

---

[4] It is noted that the ruling in this case was on August 19, 2024. Defense counsel filed a notice of intent to seek supervisory review on September 17, 2024, requesting thirty days from that date, or until October 17, 2024, to file a writ application. The district court granted counsel's notice of intent and set a return date to be filed "within the delays allowed by law." Instead, the district court should have specified a date for the return as required by Uniform Rules–Courts of Appeal, Rule 4–3, which provides that the return date should not exceed thirty days from the date of the ruling, and "[i]n all cases the judge shall set a specific return date." Here, the thirty dates from the August 19, 2024 ruling elapsed on September 18, 2024. Defense counsel filed a motion for extension on September 27, 2024, which was granted giving counsel until October 14, 2024, to file the writ, which was ultimately filed on that date. The district court does not have the authority to grant an untimely motion for an extension of the return date that has been filed outside the original or extended return date period. *See State v. Fisher*, 18-K-98 (La. App. 5 Cir. 3/19/18) (unpublished writ disposition), *writ denied*, 18-608 (La. 6/15/18), 257 So.3d 676. *See also State v. Goppelt*, 08-576 (La. 10/21/08), 993 So.2d 1188, where the Supreme Court held that refusing to consider an application under Rule 4–3 should apply to cases sparingly, especially when the State does not object. Here, the State urged no objection to defense counsel's delayed filing.

4

other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. *State v. Jenkins*, 18-645 (La. App. 5 Cir. 4/3/19), 267 So.3d 203, 207, *writ denied*, 19-1223 (La. 10/21/19), 280 So.3d 1169. The State may introduce evidence of other crimes, wrongs, or acts if it establishes an independent and relevant reason for its admissibility, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B); *Hardy*, *supra*. The evidence must tend to prove a material fact at issue or to rebut a defendant's defense. *State v. Martin*, 377 So.2d 259, 263 (La. 1979). Courts have allowed the admission of other crimes evidence to rebut a defendant's self-defense claim. *State v. Gasser*, 18-531 (La. App. 5 Cir. 7/3/19), 275 So.3d 976, 993.

If the element of intent is at issue, evidence of similar unrelated conduct is admissible to negate a defense theory that the accused acted without criminal intent and to show that he intended to commit the charged offense. *State v. Kennedy*, 17-724 (La. 9/29/17), 227 So.3d 243, 244. The supreme court has recognized the principle that where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. *State v. Jackson*, 625 So.2d 146, 150 (La. 1993). For evidence of a prior criminal act to be admitted as proof of intent, however, three prerequisites must be satisfied: (1) the prior act must be similar, (2) there must be a real and genuine contested issue of intent, and (3) the probative value of the evidence must outweigh its prejudicial effect. *Kennedy*, *supra*.

The fact that the other acts or crimes happened some time before the offense for which defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. *State v. Guidroz*, 98-377 (La. App. 5 Cir. 10/14/98),

721 So.2d 480, 486, *writ denied*, 98-2874 (La. 2/26/99), 738 So.2d 1061. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence rather than to its admissibility. *Id*.

Finally, the probative value of the extraneous evidence must outweigh its prejudicial effect. *State v. Page*, 08-531 (La. App. 5 Cir. 11/10/09), 28 So.3d 442, 451, *writ denied*, 09-2684 (La. 6/4/10), 38 So.3d 299. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Clearly, evidence of other crimes or bad acts is prejudicial since all evidence which tends to make it more probable than not that an individual committed a criminal offense is necessarily prejudicial. *State v. Williams*, 02-645 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 507, *writ denied*, 02-3182 (La. 4/25/03), 842 So.2d 398. However, the underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. *Id*. As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. *State v. Rodgers*, 16-14 (La. App. 5 Cir. 10/26/16), 202 So.3d 1189, 1201, *writs denied*, 16-2189 (La. 9/15/17), 225 So.3d 479 and 16-2093 (La. 1/29/18), 235 So.3d 1104. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. *Jenkins*, *supra*.

A. ***The July 2022 nightclub incident and shooting involving Morales and Ramos***

6

In its notice of intent, the State sought to introduce evidence of a prior 2022 nightclub altercation involving both Morales and Ramos during which a gun was fired and a person was injured. The State averred that on January 11, 2023, a witness, A.D., contacted the JPSO after seeing an online post about the arrests of Morales and Ramos for the shootings at La Rumba, and advised officers that she recognized the couple from a prior altercation occurring in July of 2022. A.D. reported encountering Morales, whom she suspected was having an affair with her husband, at a nightclub. A.D. described that a verbal altercation that turned physical ensued, during which she heard a "pop." She claimed she saw Ramos throw a chair at her. She did not see Morales with a firearm. A.D. reported that she no longer saw defendants, but later discovered a wound to her hip consistent with a graze wound from a gunshot. During its investigation, officers found a damaged projectile on the floor of the nightclub, subsequently concluded to be a .40 caliber bullet. Attached to the State's notice of intent was the Gretna police report and a supplemental police report from the July 2022 incident, the JPSO Crime Lab Firearms report, and A.D.'s identification of Morales and Ramos.

In her writ application, Morales argues that the July 2022 incident is not probative of the current January 2023 murder, particularly since Morales was never charged as the shooter in the July 2022 incident. Morales contends that there is no evidence that she had any knowledge of the alleged gunshot, or that her involvement in the prior incident proves the element of intent that she committed the charged offenses. Specifically, Morales avers the State presented no law enforcement testimony or witness testimony to show that Morales had the intent to commit the current crimes in light of the prior altercation. In short, Morales argues there is simply no connection, and thus, the district court erred in its determination that the similarities between the incidents supported the admissibility of the evidence without a substantial risk of unfair prejudice. We disagree.

7

Here, the evidence shows that both Morales and Ramos were involved in altercations that escalated into physical confrontations occurring in bar or nightclub settings. As to the charged offense occurring on January 8, 2023, at La Rumba, a verbal dispute escalated into a shooting where witnesses confirmed that Morales and Ramos were the perpetrators. Similarly, in the July 2022 incident, a confrontation between Morales and the victim at a nightclub also escalated into physical violence, during which it is suspected, based on the testimony of eyewitnesses and the grazing wound sustained by the victim, that a firearm was discharged. Comparing the factual circumstances of the incidents, even though there are some differences between the January 8, 2023 charged offense and the July 2022 incident,[5] and when considering Morales' involvement in both confrontations and the escalation of conflicts into violence, we find no abuse of the district court's discretion in determining the evidence of the July 2022 incident is admissible to refute Morales' self-defense claim in the instant case. *See Gasser*, *supra*; *Sate v. Clanton*, 19-316 (La. App. 4 Cir. 11/6/19), 285 So.3d 31. Moreover, while evidence of the prior offense is necessarily prejudicial, we further find this other crime evidence is not unduly and unfairly prejudicial, and is merely one factor that will go to the weight of the evidence rather than its admissibility.

**B.** *Admission of Evidence Obtained from Defendants' Cell Phones*

The district court granted admission of images obtained from the cell phones of Morales and Ramos, showing defendants in possession of various firearms, including a 9mm—the same type of weapon fired at the scene of the January 8, 2023 shooting based on ballistic evidence—to establish their access and

---

[5] The January 2023 incident resulted in one fatality and another critical injury, while the July 2022 incident allegedly involved a graze wound. Additionally, it appears that Morales and Ramos in the January 2023 offense were unfamiliar with the victims prior to the incident, whereas Morales and the July 2022 victim (A.D.) had prior interactions. The January incident involved two firearms, while witnesses in the July 2022 altercation reported only a "pop" without confirmed evidence of gunfire. Moreover, the January 2023 incident began with a verbal exchange leading to a shooting it in the parking lot of La Rumba, whereas the July 2022 incident purportedly began with a physical altercation inside a nightclub involving a thrown chair and a reported gunshot wound.

8

familiarity with the types of firearms used in the charged offense. We note that although the State referenced videos depicted on the cell phones in its 404(B) notice of intent and in the writ application, the writ application is devoid of any videos. Further, the district court's ruling only referred to the "photographs" of weapons. Therefore, the admissibility of videos are not before this Court at this time. *See* Uniform Rules–Courts of Appeal, Rule 1–3.

Attached to the State's notice of intent were sixteen photographs depicting multiple firearms in various settings, including two images showing unidentified individuals holding guns. One of the photographs also depicts ammunition. These photographs do not appear to constitute evidence of other crimes or bad acts committed by Morales. *See State v. Davis*, 08-165 (La. App. 5 Cir. 7/29/08), 993 So.2d 295, 304, *writ denied*, 08-2188 (La. 5/1/09), 6 So.3d 810, and *writ denied sub nom. State ex rel. Davis v. State*, 08-2200 (La. 5/1/09), 6 So.3d 811. Rather, their admissibility appears to hinge on their relevancy. *See State v. Butler*, 15-89 (La. App. 5 Cir. 7/29/15), 171 So.3d 1283, 1289-90, *writ denied*, 15-1608 (La. 10/10/16), 207 So.3d 408.

Relevant evidence is defined in La. C.E. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible, except as otherwise provided by law, and irrelevant evidence is not admissible. La. C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Generally, photographs are admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, subject to the test that their probative value outweighs any

9

prejudicial effect. *State v. Battaglia*, 03-692 (La. App. 5 Cir. 11/25/03), 861 So.2d 704, 710, *writ denied sub nom. State ex rel. Battaglia v. State*, 04-1701 (La. 4/29/05), 901 So.2d 1058. In general, an appellate court places great weight upon a trial court's ruling on the relevancy of evidence, and such a determination will not be reversed absent a clear abuse of discretion. *Id.*

Here, some of the photographs attached to the State's notice of intent depict multiple firearms, while others show a single weapon, and two of the photographs include unidentified individuals holding guns. The images also feature weapons in various contexts, such as inside a vehicle, on a bed, next to a cell phone, held in someone's hand, and inside a waistband or pocket. In the notice of intent and writ application, the State avers that the evidence was found on the cell phones of Morales and Ramos. However, it did not specify whether the photographs came from a particular defendant's phone. Additionally, although the State generally claimed that the photos showed each defendant in possession of firearms, including a 9mm, it did not further specify which defendant was depicted in which photograph or which specific photographs showed the 9mm. Also, at the hearing, the State did not further elaborate on the photographs or identify which images depicted the 9 mm handguns or showed Morales holding a firearm.

At the hearing, the State offered into evidence a JPSO police report related to the January 2023 shooting. The report indicates that Morales' cell phone was seized from her person and that a gun was recovered from the driver's side floorboard. Morales admitted in a statement to firing her firearm, stating that one shot went into the air. She also indicated that she believed Ramos owned a gun, but did not have it on him at the time of the incident. Morales described Ramos' firearm as a black and silver 9mm handgun, which she did not see after the shooting. The report further reveals that a search warrant was executed on Morales' vehicle, resulting in the seizure of a 9mm semiautomatic handgun.

10

According to the report, the scientific analysis by the firearms examiner concluded that one of the five 9mm cartridge cases collected from the crime scene was fired by Morales' Smith & Wesson handgun, while the remaining four were fired by an unknown firearm.

Additionally, the report includes the results of downloads from the cell phones of Morales and Ramos. A detective reviewed the digital content and located photographs allegedly of Morales and Ramos holding firearms, including an image on Morales' phone of a hand holding a handgun. Although the detective could not see the subject's face in this image, he believed the individual to be Ramos. Furthermore, a search of the downloaded material from Ramos' phone revealed a video of him wielding a handgun with another person while listening to music in a car, as well as several photographs of guns in Ramos' camera roll. The report states that these images and video contradict Ramos' claim that he has never owned or possessed a firearm and corroborate a statement by Morales that she has seen Ramos with a gun. As previously stated, there are no videos included in the record before us.

After reviewing the photographs, particularly the photograph showing a 9mm and *potentially* depicting Morales, we find that some of the photographs may be relevant to show that she had access to, and familiarity with, firearms similar to those used in the incident. Courts have found photographs to be probative where they demonstrated defendants' access to weapons of similar types and their skill or proficiency with firearms. *See State v. Green*, 19-123 (La. App. 5 Cir. 12/26/19), 286 So.3d 1230, 1238, *writ denied*, 21-51 (La. 3/9/21), 312 So.3d 583, *cert. denied*, -- U.S. --, 142 S.Ct. 206, 211 L.Ed.2d 88 (2021); *State v. Joseph*, 16-349 (La. App. 5 Cir. 12/14/16), 208 So.3d 1036, *writ denied*, 17-77 (La. 4/7/17), 218 So.3d 109; *State v. Everett*, 11-714 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 632-33, *writ denied*, 12-1593 (La. 2/8/13), 108 So.3d 77.

However, we find that very few details were provided at the hearing on the State's 404(B) motion, and that the record lacks sufficient information to determine which specific photographs, among the several admitted, are relevant and, thus, admissible in this matter. We find that admitting all of the photographs at this time without more information *may* be unduly prejudicial to Morales considering the unclear ownership of the weapons, not knowing from which phone the photograph was extracted, who is depicted, where and/or when the photographs were taken, the amount and type of guns depicted, and/or their connection to the case *sub judice*. *See State v. Anthony*, 98-406 (La. 4/11/00), 776 So.2d 376, 388-89, *cert. denied*, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000) (holding that "[a]s a general rule, before demonstrative evidence can be admitted into evidence it must be shown that, more probably than not, the evidence is connected to the case."). Although the State argues these photographs demonstrate Morales had access to and familiarity with firearms, we find that showcasing numerous firearms, some equipped with magazines, as well as potentially unrelated firearms and ammunition, risks creating unfair bias. Such images could lead to improper inferences about Morales' character.

Based on the limited record and lack of specifics about the photographs before us, we find it difficult to ascertain whether some of these photographs might be relevant at trial, such as for rebuttal or impeachment, if Morales denies possessing or using a firearm. For these reasons, we grant Morales' writ application, in part, and vacate the portion of the August 19, 2024 judgment granting the State's 404(B) motion as it pertains to the admissibility of the photographs obtained from the cell phones of Morales and Ramos. Further, we hereby order the State to provide specific information, in writing, to the district court and to counsel for Morales, within twenty-four (24) hours from the rendition of this disposition, pertaining to each photograph it intends to introduce at trial—

12

*i.e.*, from which cell phone the photograph was extracted; the person(s), if any, depicted; the owner and type of the firearms or ammunition depicted; where and when the photograph was taken; and the connection the photograph has to the instant case—for reconsideration by the district court as to each photograph's admissibility at trial.

For the foregoing reasons, as discussed, Morales' writ application is denied, in part, and granted, in part, with instructions. Further, the portion of the August 19, 2024 judgment granting the State's 404(B) notice of intent relating to the admission of photographs extracted from the cell phones of Morales and Ramos is vacated. Within twenty-four hours from the rendition of this ruling, the State is to produce, in writing, to the district court and to counsel for Morales, the specific information regarding each photograph as outlined above for the district court's reconsideration of the admissibility of this evidence.

Gretna, Louisiana, this 8th day of November, 2024.

**SMC**
**MEJ**
**JJM**

13

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **11/08/2024** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-K-478**

**E-NOTIFIED**
24th Judicial District Court (Clerk)
Honorable Nancy A. Miller (DISTRICT JUDGE)
Mark D. Plaisance (Relator)

Thomas J. Butler (Respondent)
Darren A. Allemand (Respondent)

**MAILED**
Remy V. Starns (Relator)
Attorney at Law
301 Main Street
Suite 700
Baton Rouge, LA 70825

Leo M. Aaron (Respondent)
Honorable Paul D. Connick, Jr.
(Respondent)
District Attorney
Twenty-Fourth Judicial District
200 Derbigny Street
Gretna, LA 70053

Cesar J. Vazquez (Relator)
Attorney at Law
848 Second Street
Gretna, LA 70053

Marcus J. Plaisance (Relator)
Attorney at Law
Post Office Box 1123
Prairieville, LA 70769

**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $ _____
☐ Return Receipt (electronic) $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$

Postmark
Here

To: Marcus J. Plaisance
Attorney at Law
Post Office Box 1123
Prairieville, LA 70769
24-K-478                    11-08-24

7016 2070 0000 0954 8995

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Marcus J. Plaisance
Attorney at Law
Post Office Box 1123
Prairieville, LA 70769
24-K-478                    11-08-24

9590 9402 2434 6249 3569 10

2. Article Number *(Transfer from service label)*

7016 2070 0000 0954 8995

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                   ☐ Agent
                                    ☐ Addressee
B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
   Mail Restricted Delivery
   00)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $ _____
☐ Return Receipt (electronic) $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$

Postmark
Here

Cesar J. Vazquez
Attorney at Law
848 Second Street
Gretna, LA 70053
24-K-478                    11-08-24

7016 2070 0000 0954 8988

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cesar J. Vazquez
Attorney at Law
848 Second Street
Gretna, LA 70053
24-K-478                    11-08-24

9590 9402 2434 6249 3569 03

2. Article Number *(Transfer from service label)*

7016 2070 0000 0954 8988

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                   ☐ Agent
                                    ☐ Addressee
B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
   Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cesar J. Vazquez
Attorney at Law
848 Second Street
Gretna, LA 70053
24-K-478                    11-08-24

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9402 2434 6249 3569 03

2. Article Number *(Transfer from service label)*

7016 2070 0000 0954 8988

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____  ☐ Agent
                               ☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
   Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

7016 2070 0000 0954 8971

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage

$

To: Remy V. Starns
    Attorney at Law
    301 Main Street
    Suite 700
    Baton Rouge, LA 70825
    24-K-478                    11-08-24

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Remy V. Starns
Attorney at Law
301 Main Street
Suite 700
Baton Rouge, LA 70825
24-K-478                    11-08-24

9590 9402 2434 6249 3568 97

2. Article Number *(Transfer from service label)*

7016 2070 0000 0954 8971

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt